United States District Court
Southern District of Texas
FILED

AUG 1 6 2004

Michael N. Milby
Clerk of Court

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| NOE SALAZAR RODRIGUEZ<br>Petitioner, | )<br>)<br>) |
| v. | )<br>) |
| | )    C. A. No.   **B - 0 4 - 1 4 0** |
| MARC MOORE, FIELD OPERATIONS DIRECTOR,<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, DRO for SAN ANTONIO AREA<br>of OPERATIONS, and JOHN ASHCROFT,<br>UNITED STATES ATTORNEY GENERAL,<br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>) |

## PETITION FOR WRIT OF HABEAS CORPUS
## AND BRIEF IN SUPPORT THEREOF

Noe Salazar Rodríguez, ("Mr. Salazar"), files the instant Petition for Writ of

Habeas Corpus and Injunctive and Declaratory judgments. Petitioner seeks relief from a

final order of removal, entered on July 15, 2004. The plaintiff seeks various forms of

declaratory and corresponding injunctive relief, as more fully discussed below.

### I. JURISDICTION

1.      Petitioner asserts habeas jurisdiction under Title 28, United States Code, ("28

U.S.C."), §2241, to review the order of removal entered against her on February 12,

2003. The petitioner is not presently detained in the custody of the Department of

Homeland Security. Respondent Moore has administrative control over petitioner's case.

Respondent Moore may execute the order of removal at any time. Respondents Moore

and Ashcroft therefore are the appropriate custodians of petitioner for habeas purposes.

1

## II. THE PARTIES

2.      The petitioner is a native and citizen of Mexico who became a Lawful Permanent Resident, ("LPR"), of the United States on November 5, 1973. He has resided continuously in the United States since that date. He is the subject of an administratively final order of removal entered on July 15, 2004.

3.      Respondent Moore is the Field Operations Director of the San Antonio, Texas, office of Immigration and Customs Enforcement, ("I.C.E."). Respondent Ashcroft is the United States Attorney General.

## III. FACTS

4.      The petitioner is a 37 year-old native and citizen of Mexico who has resided in the United States since November 5, 1973. Leticia Hernández Salazar, Mr. Salazar's spouse, is a LPR.  Mr. and Ms. Salazar have three United States citizen, ("USC") children, Jaqueline Salazar, age 8 years; Noe Salazar, Jr, age 7 years, and David Lee Salazar, age three years.  Mr. Salazar has two USC siblings, Isabel Salazar and Eliza Salazar. Additionally, Mr. Salazar has 3 siblings who are LPR's, Manuel Salazar, Gabriel Salazar and Jesús Salazar. Mr. Salazar's mother, Maria Antonia Rodríguez de Salazar is a LPR. Mr. Salazar's grandmother, Trinidad Rivera, is a USC. The Salazar family are members of St. Vincent DePaul Catholic Church in South Bend, Indiana, where the family resides. Mr. Salazar has been most recently employed as a truck driver.

5.      In Rusk County, Texas, on August 1, 1996, the Petitioner was arrested for possession of more than five but less than fifty pounds of marijuana. On August 30, 1996, in the Fourth Judicial District Court in Rusk County Texas, the petitioner waived his right of trial by jury and entered a plea of guilty. Adjudication was deferred pursuant to Article

42.03 § 5 of the Texas Code of Criminal Procedure, ("TCCP"). Petitioner was placed on community supervision for eight years. On March 14, 2001, the Fourth Judicial District Court in Rusk County, Texas issued an order terminating deferred adjudication, and dismissing the charge.

### Removal proceeding before the United States Immigration Judge

6.   Removal proceedings began upon issuance of a Notice to Appear, ("NTA"), by the Department of Homeland Security, ("DHS"), on January 16, 2003. Those proceedings were terminated by the Immigration Judge, ("IJ") on September 12, 2003. Another NTA was issued on September 16, 2003. The DHS therein alleged that the respondent is a native and citizen of Mexico and an LPR of the United States who is removable pursuant to 8 U.S.C. §§1227(a)(2)(B)(i) in that he has been convicted of an offense relating to a controlled substance and 1227(a)(2)(A)(iii), in that he has been convicted of an aggravated felony any time after admission.

7.   The petitioner argued that a deferred adjudication is not a conviction under state law, and therefore he is not removable based upon his plea of guilty. Further, he urged the IJ that denying him an opportunity to apply for relief when relief is available to similarly situated LPR's in other jurisdictions amounts to a denial of equal protection.

### Decision of the United States Immigration Judge

8.     The petitioner appeared at an individual hearing before the IJ on October 14, 2003, and requested relief from removal pursuant to 8 U.S.C. §1229b(a), Cancellation of Removal for Certain Permanent Residents, or, in the alternative, relief pursuant to 8 U.S.C. §1182(c). However, the IJ found due to the date of petitioner's guilty plea, the

effective date of the AEDPA, and the date he was placed in proceedings, neither 8 U.S.C.

§1182(c) nor 8 U.S.C. §1229b(a) relief were available.

9.        Prior to issuance of the Oral Decision, ("OD"), the IJ mentioned 8 U.S.C.

§§1182(c) and 1229b(a) and stated:

> It would appear to the court that respondent is not eligible for either of those forms
> of relief. Respondent's conviction for possession of marijuana would be an
> aggravated felony under the Immigration laws because it is a felony under Texas
> law and punishable under the Federal Controlled Substances Act. In addition,
> would not appear that he would be eligible for 212(c) relief since this is a removal
> proceeding and the only way he would be eligible for 212(c) is if he was a, came
> within the parameters of the Supreme Courts decision in *INS v. St Cyr*,...It would
> appear that he would not because he pled guilty to the possession of marijuana
> offense on August 30, 1996. The offense wasn't committed until August 1, 1996.

Oral Decision of the I.J., October 14, 2003 at 7.

## Appeal to the Board of Immigration Appeals

10.       Petitioner's appeal to the Board of Immigration Appeals, ("BIA"), stressed that a

single offense for simple possession of a controlled substance is not a drug trafficking

offense, and therefore not an aggravated felony. He further urged the BIA that application

of the decision of the Fifth Circuit in *United States v. Hernandez Avalos*, 251 F.3d 505,

(5th Cir. 2001), and the effect of it's decision in *In re Salazar Regino*, 23 I&N Dec. 223,

(BIA 2002), occasions a violation of his right to equal protection under the law.

11.       On July 15, 2004, the BIA dismissed Mr. Salazar's appeal, stating that the

decision of the IJ was correct. The order also mentioned that the BIA is without authority

to rule on the substance of Mr. Salazar's constitutionally based arguments. "On appeal,

the respondent contends that his removal would be unconstitutional or that the laws under

which she has been found removable are unconstitutional. The Board is not empowered,

4

25

however, to rule on the constitutionality of the statutes and regulations we administer." Board's decision and order, July 15, 2004, (internal citations omitted).

## IV. CAUSES OF ACTION IN HABEAS CORPUS

### a.    VIOLATION OF DUE PROCESS

12.    This Court has jurisdiction under 28 U.S.C. §2241 to review orders of removal, even though the petitioner did file a petition for review at the Fifth Circuit. In *McCarthy v. Madigan*, 503 U.S. 140 (Supreme Court 1992), the United States Supreme Court commented upon the requirement that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. 503 U.S. 140, 144-45. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." The exhaustion principle acknowledges that the administrative agency charged by Congress retains primary responsibility for the adjudication of those programs. "Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." 503 U.S. 140, 145.

13.    It is established law in the Fifth Circuit that the "jurisdiction stripping provisions," found at 8 U.S.C. §1252(a)(2), preclude a petition for review of a final order of removal arising from a criminal offense covered by 8 U.S.C. §1227(a)(2)(B)(i). While the Fifth Circuit has jurisdiction to determine its' own jurisdiction, once the court determines that the order of removal is based on a controlled substance offense,( 8 U.S.C. §1227(a)(2)(B)(i), "the jurisdiction stripping provisions of §1252 clearly apply." *Flores Garza v. INS,* 328 F.3d 797, (5th Cir. 2003). Because the order of removal in this matter

was based on the identical provision of law, the Fifth Circuit would have dismissed any petition for review due to lack of jurisdiction. Therefore, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first filing a petition for review at the Fifth Circuit.

## ISSUES PRESENTED

(A)    Mr. Salazar can only be said to have suffered a conviction through retroactive application of 8 U.S.C. §1101(a)(48).

(B)    Retroactive application of the decisions of the BIA decision in *Matter of Roldan,* 22 I&N Dec. 512, (BIA 1999) and *In re Salazar Regino,* 23 I&N Dec. 223, (BIA 2002), unfairly increase the penalty for the state offense without notice that he would be subject to automatic deportation.

(C)    Application of the BIA decision in *Salazar Regino, supra,* violates equal protection because other LPR's who are similarly situated will not be found to be removable or would be eligible for relief.

(D)    Excluding Mr. Salazar from the benefits of the Attorney General's special 212(c) rule violates equal protection.

(E)    Notions of fundamental fairness and the doctrine of Substantive Due Process are violated when Mr. Salazar is subjected to automatic deportation without any consideration of his equities in the United States.

## (A).   MR. SALAZAR CAN ONLY BE SAID TO HAVE SUFFERED A CONVICTION THROUGH RETROACTIVE APPLICATION OF THE DEFINITION OF CONVICTION AT 8 U.S.C. 1101(A)(48).

14.    Prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRAIRA"), the INA contained no definition of the term "conviction." The BIA's analysis of when a non-citizen suffered a conviction for purposes of immigration laws was set forth in *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988).

6

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or he has admitted sufficient facts to warrant a finding of guilty; (2) the judge has entered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, revocation or suspension of a driver's license, deprivation or nonessential activities or privileges, or community service); and (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence on the original charge.

*Matter of Ozkok, supra,* at 551-52.[1]

15.    In *Martínez Montoya v. INS,* 904 F.2d 1018, (5th Cir. 1990), the Fifth Circuit found that a deferred adjudication in Texas does not comport with the BIA's requirements for a conviction as outlined in *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988). (A formal plea of guilt and any resulting punishment or restriction, and no further proceedings being necessary for a future finding of guilt equals a conviction.") "Under the *Ozkok* test, in order to consider *Martínez Montoya* convicted for immigration purposes, further proceedings on the issue of his guilt must not be available before a judgment can be entered. Because further proceedings are available under the Texas deferred adjudication procedure, this requirement is not satisfied." 904 *F.2d 1018, 1026. Martínez Montoya* was controlling precedent in the Fifth Circuit after the plea was taken. The BIA's ruling in *In re Roldan Santoyo,* 22 I&N Dec. 512, (BIA 1999), controlled after the matter was set aside. Yet, *In re Roldan Santoyo, supra,* never comments on retroactivity.

---

[1] *Matter of Ozkok, supra. See also Matter of G,* 9 I&N Dec. 159 (BIA 1960, A.G. 1961), 12 I&N Dec. 576 (BIA 1966, A.G. 1967), *supra; Matter of Ibarra-Obando, supra;* and *Matter of Luviano,* 21 I&N Dec. 235.*supra*

16.    The *Roldan* decision overruled long-standing BIA precedent regarding the effect

of an expungement or state rehabilitative  statute on a plea of guilty in a state court. *In re*

*Roldan-Santoyo, supra* at 531. The majority opinion in *Roldan* reviewed previous Board

decisions concerning the definition of conviction, concentrating especially on *Matter of*

*Ozkok, supra. See also: Matter of G,* 9 I&N Dec. 159 (BIA 1960, A.G. 1961), *Matter of*

*Ibarra-Obando,* 12 I&N Dec. 576 (BIA 1966, A.G. 1967), and *Matter of Luviano,* 21

I&N Dec. 235, (BIA 1996). Because state laws which provide for vacation of a

conviction upon successful completion of probation, expungement, deferral of

adjudication and other ameliorative relief vary widely in form and effect, the BIA sought

to provide a consistent framework for the analysis of a conviction for immigration

purposes. *In re Roldan* at 516-18. In *Ozkok, supra,* the BIA adopted a three-part

definition:

> "(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or
> nolo contendere or he has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has entered some form of punishment, penalty, or restraint on the
> person's liberty to be imposed (including but not limited to incarceration,
> probation, a fine or restitution, or community-based sanctions such as a
> rehabilitation program, revocation or suspension of a driver's license, deprivation
> or nonessential activities or privileges, or community service); and
> (3) a judgment or adjudication of guilt may be entered if the person violates the
> terms of his probation or fails to comply with the requirements of the court's order,
> without availability of further proceedings regarding the person's guilt or
> innocence on the original charge."

*Matter of Ozkok, supra,* at 551-52.

17.    The Respondent in *Roldan* pleaded guilty to possession of marijuana in Idaho in

1993. 22 I&N Dec. 512, 515. Adjudication of judgment was withheld, and he was issued

an Order to Show Cause by the INS in 1994. In 1995, the Respondent's guilty plea was

vacated. *Ibid.* The Respondent contested deportability because his conviction had been

vacated pursuant to § 19-2604(1) of the Idaho Code. *Id* at 516. The BIA noted its policy,

formulated in previous decisions, concerning a respondent situated similarly to the

Respondent in *Roldan*. "An alien who has been accorded rehabilitative treatment under a

state statute will not be deported if he establishes that he would have been eligible for

federal first offender treatment under the provisions of 18 U.S.C. §3607 had he been

prosecuted under federal law." 22 I&N Dec. 512, 523, *citing Matter of Manrique,* 21

I&N Dec. 58, 63.

> The *Manrique* requirements are:
>
> (1) The alien is a first offender, i.e., he has not previously been convicted of violating any federal or state law relating to controlled substances;
> (2) The alien has pled to or been found guilty of the offense of simple possession of a controlled substance;
> (3) The alien has not previously been afforded first offender treatment under any law;
> (4) The court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending completion of probation or the proceedings have been or will be dismissed after probation."

21 I&N Dec. 58, 70.

18.    The *Roldan* decision pointed out that the variety of state rehabilitative statutes,

under which adjudication is deferred subsequent to a plea of guilty, others which set aside

a guilty plea after a term of probation, and still others which erase the effects of a guilty

plea through expungement, require the Immigration Judges and the Board to "examine

the vagaries of each state's statute to determine if the original determination of guilt

survived for some purposes..." *In re Roldan Santoyo,* 22 I&N Dec. 512, 525.

Commenting on the effect of §322 of the Illegal Immigration Reform and Immigrant

Responsibility Act of 1996 ("IIRAIRA"), through which the definition of "conviction" at

INA §101(a)(48) was amended, the BIA stated, "...Congress has now removed state

rehabilitative actions as a factor in determining whether an alien is considered convicted

for immigration purposes." 22 I&N Dec, 512, 528. "..(W)e must decide whether our

decision in *Matter of Manrique* has any continuing viability in light of the approach

Congress has taken in IIRAIRA toward aliens guilty of criminal misconduct." *Ibid.*

"To determine the continued viability of *Matter of Manrique,* " the BIA said in

*Roldan,*

> "...(W)e find it necessary to reconsider first, in light of the new definition at INA
> §101(a)(48), the effect to be given to any state action, whether it is called setting
> aside, annulling, vacating, cancellation, expungement, dismissal, discharge, etc., of
> the proceedings, sentence, charge, or plea, that purports to erase the record of guilt
> of an offense pursuant to a state rehabilitative statute."

*Ibid.*

19.    *Roldan* directly addressed the question of an exception to the amended definition

of conviction for first time drug offenders. "...Congress failed to provide any exception

in INA §101(a)(48) to exempt first time offenders determined to be guilty of simple

possession of a controlled substance from being "convicted" under the INA." 22 I&N

Dec. 512, 531. "We find no evidence in Congress' recent enactments that it intends to

accord special treatment in the application of it's immigration laws to first-time drug

offenders who have been accorded rehabilitative treatment under a state law." 21 I&N

Dec. 512, 532.

20.    Upon concluding that any plea or finding of guilt which results in any form of

restriction on the freedom of the defendant is a conviction for immigration purposes, the

BIA departed from a long standing policy."...(T)o continue to apply a policy exception

providing federal first offender treatment to certain drug offenders who have received

state rehabilitative treatment, in the face of the definition by Congress, would be

10

tantamount to creating a new form of relief that is not provided for in the Act." 21 I&N
Dec. 512, 531. The decision held that *Matter of Manrique* was incompatible with the new
definition of "conviction" supplied by IIRAIRA §322. "We conclude that *Matter of
Manrique, supra,* and its predecessors, which sought to balance conflicting policy
interests in the absence of direction from Congress as to when an alien is considered to be
convicted for immigration purposes, have been superseded by INA §101(a)(48)." *Id* at
533.

21.     The petitioner respectfully submits that there is a meaningful distinction between
the factual situation from which the BIA's decision in *Matter of Roldan, supra,* arose,
and his own. The respondent in *Roldan* pleaded guilty to possession of marijuana in
Idaho in 1993. 21 I&N Dec. 512, 515. Adjudication of judgment was withheld, and he
was issued an Order to Show Cause by the INS in 1994. The respondent contested
deportability because his conviction was subsequently vacated pursuant to § 19-2604(1)
of the Idaho Code. 21 I&N Dec. 512, 516.

22.          In *Roldan*, deportation proceedings had already begun when the
conviction was vacated. Roldan had adequate notice that his criminal conduct and plea of
guilty may have placed his immigration status in jeopardy. Here, however, the petitioner
only became amenable to removal two years after the guilty plea was set aside. Given the
state of the immigration laws on the date he pled, it is fundamentally unfair to remove the
petitioner without first affording him an opportunity to present evidence of his numerous
equities and length of residence in the United States.

11

**(B).    RETROACTIVE APPLICATION OF THE BIA DECISIONS IN *ROLDAN, SUPRA*, AND *SALAZAR REGINO, SUPRA*, UNFAIRLY INCREASE THE PENALTY FOR THE STATE OFFENSE WITHOUT NOTICE THAT THE PETITIONER WOULD BE SUBJECT TO AUTOMATIC DEPORTATION.**

23.    TCCP Art 42.03 § 5, is entitled, Deferred Adjudication; Community Supervision,

and states, in relevant part:

"(a) Except as provided by Subsection (d) of this section, when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings *without entering an adjudication of guilt, and place the defendant on community supervision.*"
TCCP ART 42.03, §5(a). (emphasis added).

TCCP ART 42.03 §5 (c) states, in relevant part:

"(c) On expiration of a community supervision period imposed under Subsection (a) of this section, if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him. The judge may dismiss the proceedings and discharge a defendant,…, prior to the expiration of the term of community supervision if in the judge's opinion the best interest of society and the defendant will be served….Except as provided by Section 12.42(g), Penal Code, a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense."
TCCP ART 42.03 §5 (c).

24.    Even though deferred adjudication is a conviction according to *Roldan*, Mr.

Salazar could have applied for Cancellation had he been placed in removal proceedings. 8

USC §1229(b), (INA § 240A(a)) is entitled, "Cancellation of Removal for Certain

Permanent Residents", and states:

The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien
(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

12

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

25.          Mr. Salazar would have been prima facie eligible for relief pursuant to 8 USC §1229(b). He is a long time LPR and prior to the initiation of removal proceedings, the BIA specifically held that possession of marijuana in Texas is not an aggravated felony. *See Matter of KVD*, 22 I&N Dec. 1163 (BIA 1999). The criminal charge had been dismissed for two years when Mr. Salazar was rendered removable and ineligible for any relief. The statute under which he entered his plea assured Mr. Salazar, "a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." Mr. Salazar was not in proceedings when *Salazar Regino* became law. Relief became unavailable solely due to the timing of removal proceedings, and not as a result of any action or inaction by Mr. Salazar.

26.          Applications of 8 U.S.C. §§1101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any possibility of relief for people who entered into plea agreements with the expectation that they would be eligible for such relief, if relief ever became necessary, clearly creates liability for events that have already run their course. In this case, the petitioner would not have even needed any relief. As an LPR, he would neither be deportable or removable. Moreover, by operation of Texas law, especially when considered in light of the Fifth Circuit's ruling in *Martinez Montoya, supra,* establish that the term "conviction" cannot be fairly applied to him, because no sentence was ever imposed. The retrospective creation of encumbrance upon petitioner's LPR status

through IIRAIRA §321 is particularly egregious, because his guilty plea would not have

rendered him removable when entered, and was not considered an aggravated felony until

2 years after the plea was set aside.

**(C). APPLICATION OF THE BIA DECISION IN *SALAZAR REGINO, SUPRA* VIOLATES EQUAL PROTACTION BECAUSE OTHER LPR'S WHO ARE SIMILARLY SITUATED WILL NOT BE FOUND TO BE REMOVABLE OR WOULD BE ELIGIBLE FOR RELIEF.**

27.    In *Salazar Regino, supra,* the BIA found that a non-citizen who has been granted

deferred adjudication for simple possession of a controlled substance and whose case

arises within the 5th Circuit has been convicted of an aggravated felony and is ineligible

for relief from removal. In the 2nd, 3rd, 4th, 6th, and 7th circuits, a similarly situated non-

citizen may eligible for discretionary relief. *Matter of Yañez García,* 23 I&N Dec. 390,

(BIA 2002).

28.    Possession of more than 60 grams of marijuana in Montana is a felony. *See*

Montana Code Annotated § 45-9-102. Simple possession of any amount of marijuana is a

misdemeanor in California. *See* California Penal Code §1000.  In *USA v. Arellano*

*Torres,* 303 F.3d 1173 (9th Cir. 2002), the 9th Circuit reviewed whether the petitioner's

prior conviction for possessing a controlled substance qualified as an aggravated felony

for purposes of the U.S.S.G.

> Possession of a controlled substance, however, may satisfy the second prong of the
> aggravated felony definition if it is "punishable by more than one year's
> imprisonment under applicable *state* . . . law." *Id.* (emphasis added); *see also*
> *United States v. Ibarra-Galindo,* 206 F.3d 1337, 1339-40 (9th Cir. 2000) (holding
> that crime that constitutes misdemeanor under federal law may nonetheless be
> considered aggravated felony if it qualifies as felony under state law), *cert. denied,*
> 531 U.S. 1102 (2001), *overruled in part by Corona-Sanchez,* 291 F.3d at 1210.
> That is the case here: under Nevada law, possession of a controlled substance is a
> category E felony, NRS 453.336(2), which Nevada defines as "a felony for which a
> court shall sentence a convicted person to imprisonment in the state prison for a

14

minimum term of not less than 1 year and a maximum term of not more than 4 years." NRS 193.130.s

*Arellano Torres, supra* at 1177.

29.    According to the ruling of the BIA in *Salazar Regino, supra,* and *Yañez García, supra,* a non-citizen who has a sole conviction for simple possession of a controlled substance is an aggravated felon if federal law of the relevant jurisdiction so declares. An LPR convicted of felony possession of marijuana in Montana is an aggravated felon, according to the ruling of the 9th Circuit in *United States, v. Arellano Torres, supra.* However, given the previous ruling of the 9th Circuit in *Lujan Armendariz v. INS and Roldan Santoyo v. INS,* 222 F. 3d 728 (9th Cir. 2000) the same would not even be removable because he or she may rely on the ameliorative provisions at 18 USC §3607 to avoid a finding of removability. This anamolous and unpredictable outcome is the progeny of the policy presently employed by this Board in construing the definition of aggravated felony through the lens of federal circuit court rulings in cases involving the United States Sentencing Guidelines.

30.    The BIA stated, in *Yanez García,* "[I]n immigration cases arising within circuits that have not yet had occasion to consider this question, we will apply the standards adopted by the majority of the circuit courts." 23 I&N Dec. 390, 391. Neither the 4th Circuit nor the 6th Circuit have decided whether a state offense which is a felony may be also be an aggravated felony drug trafficking crime for purposes of relief in removal proceedings, and the BIA will adopt the standard applied by the majority of the courts which have spoken to the question. In North Carolina, possession of more than 1.5 ounces of marijuana is a felony. In Maryland, simple possession of any amount of

marijuana is a misdemeanor. *See* Maryland Code Annotated, Crimes and Punishments,

§287. Maryland and North Carolina are both located in the Fourth Circuit, and the Fourth

Circuit has yet to rule on this question. However, were the BIA called upon to decide

whether an LPR convicted of possessing 2 ounces of marijuana in North Carolina has

been convicted of an aggravated felony, the agency would find that LPR ineligible for

any relief from removal, given its' rulings in *Salazar Regino, supra*, and *Yanez García,*

*supra*. However, a similarly situated LPR who resides in Maryland could have been

convicted of possessing 4 ounces of marijuana , (a misdemeanor under Maryland law)

and be permitted to apply for cancellation of removal.   *See In re Santos López*, 23 I&N

Dec. 419 (BIA 2002), and *In re Elgendi*, 23 I&N Dec. 515, (BIA 2002).


31.      When applied to a non-citizen whose removal proceedings arise within the 5th

Circuit, a gross inequity results which stems from the application of *dicta* from the 5th

Circuit's decision in *United States v. Hernández Avalos*, 251 F.3d 505, (5th Cir. 2001), a

case which analyzed the USSG. That USSG decision found that a single conviction for an

offense relating to a controlled substance is an aggravated felony, thus foreclosing any

relief to such a respondent. Counting the conviction as an aggravated felony which

renders the respondent unable to apply for discretionary relief places any non-citizen who

has been arrested for a controlled substance offense in the 5th Circuit in an unfairly

precarious position. The LPR cannot depend on any provision of immigration law to

remain in the United States.

32.      A respondent who has been an LPR for one year and pleads guilty to possession

of a controlled substance will not be found to be removable, if he resides within the

16

jurisdiction of the 9th Circuit, pursuant to the decision of the BIA in *Matter of Salazar Regino, supra.* If he resides in the 3rd Circuit, he would be found removable yet eligible for discretionary relief. *See Gerbier v. Holmes,* 280 F. 3d. 297 (3rd Cir. 2002).

33.     The resulting disparity in treatment of first time non-citizen controlled substance offenders violates the principle of equal protection, and will yield some egregiously unfair results. Someone with very little time and few equities in the United States who has been found guilty in the courts of Arizona or California can rely on the ameliorative provisions enacted by the United States Congress in the event that removal proceedings are initiated. A person convicted in Pennsylvania or Delaware would be found removable, yet ultimately eligible for cancellation of removal. Yet another long time LPR, with extensive family ties and considerable property in the United States, is automatically rendered removable with no hope of any relief, even if a formal judgment of guilt is never entered in a state court, because he or she resides in Louisiana, Mississippi, or Texas.  Continuation of such a policy towards first time controlled substance offenders violates equal protection, and is fundamentally unfair, both in theory and in its application.

34.     While the BIA's decisions in *In re Santos López, supra,* and *In re Elgendi, supra,* were both favorable to the LPR's, they are emblematic of the problems inherent in the Board's relinquishment of its' role in disentangling the definition of aggravated felony for purposes of removal proceedings from its' application to sentencing enhancements under the USSG.

35.     The respondents in each case were convicted of misdemeanor possession offenses. *In re Santos López, supra, In re Elgendi, supra.* The Board announced its'

17

decision to defer to federal courts concerning the definition of a type of offense Congress

has explicitly indicated the Board should clarify in *Yanez Garcia, supra. Santos Lopez*

and *Elgendi* manifest that lack of a uniform standard for interpreting the definition of

aggravated felony creates an emphatically discernible violation of due process. While the

Board notes in *Elgendi* that the 1st, 2nd, 3rd 5th, 9th, 10th, and 11th circuits have interpreted

8 USC §1101(a)(43), the 7th Circuit has yet to speak to the aggravated felony definition.

Under Indiana law, possession of more than 30 grams of marijuana is a felony. In

Wisconsin, simple possession of marijuana is always a misdemeanor offense. *See*

Wisconsin Statutes Annotated §59.54(2). If the BIA utilizes the reasoning employed in

*United States v. Hernandez- Avalos, supra, United States v. Simon, supra; United States*

*v. Briones- Mata, supra; United States v. Cabrera-Sosa, supra; United States v. Restrepo-*

*Aguilar, supra, and United States v. Arellano-Torres, supra,* an LPR convicted in Indiana

for less than two ounces of marijuana is an aggravated felon while another LPR convicted

in Wisconsin after possessing two pounds of marijuana may seek relief. Those

unbalanced outcomes generate from the BIA's decision, announced in *Salazar Regino,*

*supra,* and *Yanez Garcia, supra,* and visible in *Santos Lopez, supra,* and *Elgendi, supra,*

to relinquish its' role as the agency charged with administering the immigration laws.

36.    Possession of marijuana in Texas should not be construed as an aggravated felony

because it is not a "serious drug offense," as defined at federal law. 18 U.S.C.

§924(e)(2)(A)(ii) a "serious drug offense" is defined as "an offense under State law,

involving possessing with intent to distribute a controlled substance or which a maximum

term of imprisonment of ten years or more is prescribed by law." No matter the disparity

in interpretations of "drug trafficking" between and among federal circuit courts and the

various states, all jurisdictions view drug trafficking as serious offenses, due to the potential harm to communities in which it occurs. Given that federal law does not define possession of marijuana in Texas as a "serious drug offense," it should not be considered a drug trafficking crime.

37.    A state offense analogous to a conviction under 8 USC §924(c)(2) is a drug trafficking offense within the meaning of INA §101(a)(43)(B). When the BIA ceded its' authority to render the INA intelligible for purposes of relief from removal to federal courts which have never spoken to that precise question, any aspect of a uniform standard for classifying offenses was squandered. Despite the recognition that the Board must defer to federal authority in cases arising within the same circuit, only the Second circuit has spoken to the meaning of the term aggravated felony for purposes of removal proceedings. All of the remaining federal decisions concerning the effect of drug related offenses upon LPR's are appeals of sentencing enhancements under the USSG. The BIA's authority to interpret the INA, explicated by Congress, remains in full force and effect. In future cases concerning the applicability of the definition of "drug trafficking crime" under federal law to state offenses relating to any controlled substance, the Board should apply the method of analysis originally enunciated in *Matter of Barrett, supra,* and *Matter of Davis, supra.* A state drug offense may be considered an aggravated felony only if it is analogous to an offense, such as possession, sale, or distribution of a controlled substance, that would be punishable under one of the three acts referenced in 18 U.S.C. §924(c)(2). After all, as the majority opinion in *Yanez García, supra,* declares: "To date, no circuit court of appeals has expressed disagreement with this conclusion." 23 I&N Dec. 390, 394.

19

**(D). EXCLUDING MR. SALAZAR FROM THE BENEFITS OF THE ATTORNEY GENERAL'S SPECIAL 212(C) RULE VIOLATES EQUAL PROTECTION.**

38.    In a Memorandum dated December 7th, 1999, the Chief Immigration Judge stated that an LPR who would be statutorily eligible for 212(c) relief "but for" §440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and is statutorily eligible for Cancellation of Removal for Permanent Residents under INA § 240A(a), may be placed in removal proceedings and apply for § 240A(a) relief. "…(A)liens who have a pending case before the Immigration Court can apply." Memorandum of the Chief Immigration Judge, December 8th, 1998. The procedure for adminstratively closing deportation proceedings and issuing a Notice to Appear, ("NTA"), in order to afford a qualified LPR the opportunity to apply for 240A(a) relief in removal proceedings became known as "repapering."

39.    Mr. Salazar is a LPR described in the Memorandum of the Chief Immigration Judge. But for §440(d) of the AEDPA, Mr. Salazar was eligible for relief pursuant to 8 U.S.C. §1182(c) and 1229b(a). However, Mr. Salazar had no opportunity to avail himself of cancellation through repapering. Cancellation is only available to an LPR in removal proceedings. In Mr. Salazar's case, proceedings were not initiated until after the AG's 212(c) rule was initiated on August 13, 2002.  The A.G's rule, entitled, "§212(c) relief for aliens with certain criminal convictions before April 1, 1997, states, in relevant part:

> "Under this rule, aliens whose pleas were made before April 24th 1996, regardless of when they were entered by the court, will be eligible to apply for §212(c) relief without regard to the amendments made by AEDPA. Thus, an LPR who has not served an aggregate term of at least five years for aggravated felonies may apply for §212(c) relief, if otherwise eligible, with respect to any criminal convictions arising from a plea made before April 24th 1996."

20

67  Federal Register 156, 52629.

40.    Hence, for Mr. Salazar relief became unavailable solely due to the timing of removal proceedings, and not as a result of any action or inaction on his part. Denying access to relief to Mr. Salazar simply because his plea was entered between April 24, 1996 and April1, 1997 is unconstitutionally arbitrary. Mr. Salazar would have been eligible for relief both before and after those dates, yet the IJ pretermitted his applications for relief as a result of the BIA decisions in *Roldan, supra,* and *Salazar Regino, supra.* There is no legitimate state interest in denying Mr. Salazar access to relief due to the timing of proceedings. His family will not suffer more or less; he is equally able to demonstrate rehabilitation; his criminal record and work history remain the same. All of the factors upon which relief may be granted remain unchanged.

41.    AEDPA §440(d) removed §212(c) relief for "any alien who is *deportable* by reason of having committed any aggravated felony, any controlled substance offense,..." (emphasis added). Non-citizens who were present in the United States prior to April 1, 1997, were amenable to deportation proceedings, and non-citizens who the INS believed excludable from the United States were placed in separate exclusion proceedings. AEDPA §440(d) only applied in deportation proceedings, not in exclusion proceedings. Relief pursuant to 8 U.S.C. §1182(c) relief remained available to persons in exclusion proceedings despite the enactment of the AEDPA.  Had Mr. Salazar immediately departed the United States on the day of his plea of guilty and later had the good fortune to be detained at a designated Port of Entry upon his return after a brief absence, his long U.S. residence, his immediate and extended family, his solid employment history, and any evidence of rehabilitation would be factors for consideration in an application for

21

discretionary relief pursuant to INA §212(c). *See: Matter of Marín,* 16 I&N Dec. 581 (BIA 1978).

42.    Had he known the relief would be unavailable on the date he entered a plea, Mr. Salazar may have chosen to go to trial instead of pleading guilty. Furthermore, given his long residence and extensive family ties in the United States, the possibility for success on the merits of an application for relief pursuant to 8 U.S.C. §1182(c) was very substantial, had he been placed in exclusion proceedings and permitted to apply. *See: Matter of Marín, supra, Matter of Edwards,* Int. Dec. 3134, (BIA 1990). Another LPR with an identical conviction on the same date, but who left the United States prior to April 1st, 1997, and was then issued an I-122, Notice of Exclusion Proceedings upon his or her application for admission as a returning resident, would have been detained by the INS and permitted to apply for the same relief which Mr. Salazar now seeks.

43.    Mr. Salazar submits that such an inequitable result, through which some LPR's, who were convicted of the same offense in the same month and year as he, were permitted to apply for 212(c) because they left the United States prior to April 1st, 1997, and were detained and placed in exclusion proceedings upon return, is fundamentally unfair.

**SECOND CAUSE OF ACTION-**

**V.    INJUNCTIVE AND DECLARATORY JUDGMENT**

44.    Executing a removal order can have serious, and in some cases, permanent consequences. Even where the person was not deportable as charged, and deportation results in a miscarriage of justice, it can make it difficult, if not impossible, to set aside the deportation order. *See Lara v. Trominski,* 216 F.3d 487, 494, n.8 (5th Cir. 2000) (Must

22

show that there is a freestanding due process right to be free of 'gross miscarriage of justice' during the immigration process.").

45.     The Due Process Clause of the Fifth Amendment prohibits the interference or impairment of a fundamental right unless the law accomplishes a compelling state interest. Further, the relation between the objective of the law and the method employed to accomplish the state's aim must be necessary, and narrowly tailored to meet that end. If the government may achieve its' goal in a less burdensome way, then a law restricting a fundamental right violates Due Process. *See Moore v. East Cleveland* 431 U.S. 494 (1977).

46.     Choices and decisions concerning marriage, procreation, and raising ones' family implicate fundamental rights. The United States Supreme Court has applied strict scrutiny to laws impinging upon fundamental rights. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

47.     The law must be drafted to ensure that the government can achieve its' goal in the way that is the least exacting and troublesome to those whose fundamental rights are being restricted by its' enforcement. In *Pierce v. Society of Sisters, supra,* the Supreme Court voided a statute which it held:

> [U]nreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.

268 U.S. 510, 534-535

23

**(E).    NOTIONS OF FUNDAMENTAL FAIRNESS AND THE DOCTRINE OF SUBSTANTIVE DUE PROCESS ARE VIOLATED WHEN MR. SALAZAR IS SUBJECTED TO AUTOMATIC DEPORTATION WITHOUT ANY CONSIDERATION OF HIS EQUITIES IN THE UNITED STATES**

48.     Article I of the United States Constitution grants plenary power over immigrants, naturalization, and immigration laws to Congress. U.S. Const. Art. I, Sec. 8, cl. 4. However, a long-term LPR residing with his entire nuclear and extended family may accrue significant business and property ties over the years. *See Demore v. Kim*, 123 S.Ct. 1708, 1711 (2003)

49.     A law enacted by Congress to remove that person should provide, "safeguards against essentially unfair procedures." *Bridges v. Wixon* 326 U.S. 135, 153, (Supreme Court 1945). Because in the instant case the aggravated felony definition is applied to an offense which was vacated two years prior to the initiation of proceedings, summary removal is inherently inequitable, despite the almost unlimited authority of Congress to regulate the presence of non-citizens.

50.     In the case of a non-citizen, "whose roots were deeply fixed in this land," the United States Supreme Court noted "deportation without a hearing may be corrected by habeas corpus." 326 U.S. 135, 156. Here, the petitioner was afforded a hearing before the IJ, and an opportunity for review of that decision by the BIA. Yet the IJ pretermitted his application prior to considering the merits. The petitioner respectfully submits that summary removal as a result of a conviction which was vacated two years prior to the initiation of removal proceedings and for which he could not have been deported initially, does not comport with due process, even in the face of plain language from Congress.

24

51.    In *Bridges v. Wixon, supra,* the Supreme Court considered the due process rights

of a long-time resident non-citizen who had been accused of involvement, (and perhaps

collaboration), with the communist party.  Despite that onerous accusation against a non-

citizen, the Supreme Court noted,

> We are dealing here with procedural requirements prescribed for the protection of
> the alien. Though deportation is not technically a criminal proceeding, it visits a
> great hardship on the individual and deprives him of the right to stay and live and
> work in this land of freedom. That deportation is a penalty-at times a most serious
> one-cannot be doubted. Meticulous care must be exercised lest the procedure by
> which he is deprived of that liberty not meet the essential standards of fairness.

326 U.S. 135, 154.

52.    In *Kwong Hai Chew v. Colding,* 344 U.S. 590, (1953), the issue was petitioner's

detention, without notice of any charge against him and without opportunity to be heard

in opposition thereto. 344 U.S. 590, 595.  Here, the petitioner became aware that the

government was denying him lawful admission to the United States for events which he

had every reason to believe had been resolved two years earlier. While he was present at

his removal hearing, the petitioner's appreciable family and property ties received no

meaningful, individualized consideration.

> It is well established that if an alien is a lawful permanent resident of the United
> States and remains physically present there, he is a person within the protection of
> the Fifth Amendment. He may not be deprived of his life, liberty or property
> without due process of law. Although it later may be established, as respondents
> contend, that petitioner can be expelled and deported, yet before his expulsion, he
> is entitled to notice of the nature of the charge *and a hearing at least before an*
> *executive or administrative tribunal.* Although Congress may prescribe conditions
> for his expulsion and deportation, *not even Congress may expel him without*
> *allowing him a fair opportunity to be heard.*

344 U.S. 590, 597-98. (emphasis added).

25

53.     The opportunity to become a naturalized citizen of the United States is the chief benefit of LPR status. An LPR must demonstrate significant attachment to the United States in the form of continuous physical presence, acquisition of English as a second language and considerable knowledge of our nation's culture, history, and system of government. *See* 8 U.S.C. §1427. Congress' plenary power to establish and enforce those requirements is specifically enumerated in Article I, section 8, clause 4 of the United States Constitution. Nevertheless, Congress authority is not unduly invaded if the doctrine of substantive due process is applied to long-time LPR's who have been found removable as a result of a deferred adjudication. Under the doctrine of substantive due process, courts have traditionally recognized respect for the liberty of the individual and the sanctity of the family among the values upon which our nation was founded. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

54.     If not for his deferred adjudication, the petitioner would satisfy all of the requirements for naturalization. Under the INA as currently construed, instead of further rehabilitating himself in order to obtain citizenship and realize the predominate benefit of LPR status, Mr. Salazar's status must be terminated, and he must be ousted with no possibility of ever obtaining lawful status in the future, notwithstanding any other aspect of his life.

55.     In *Stanley v. Illinois,* 405 U.S. 645, (1972), the Supreme Court held that an unmarried father was entitled to a hearing on his fitness as a parent before his children were taken from him. Illinois law provided married parents notice and a hearing when the

state sought to terminate parental rights. Because the state did not provide the same

procedures for unmarried parents, the Court held the Illinois dependency statute violated

equal protection. 405 U.S. 645, 649. Unmarried parents were presumed unfit *per se*,

children were placed in foster homes and, "the unwed father's claim of parental

qualification is avoided as irrelevant." *Id.*  The Supreme Court's analysis in *Stanley v.*

*Illinois, supra,* focused on equal protection as guaranteed by the Fifth and Fourteenth

amendments and not on substantive due process. Further, the Court cited *Cafeteria*

*Workers v. McElroy*, 367 U.S. 886, (1961), and mentioned "due process of law does not

require a hearing "in every conceivable case of government impairment of private

interest." 405 U.S. 645, 650, *citing Cafeteria Workers v. McElroy, supra* at 894.

Moreover, Justice White's opinion spoke to the nature of procedural due process:

> [T]he very nature of due process negates any concept of that "what procedures due
> process may require under any given set of circumstances must begin with a
> determination of the precise nature of the government function involved as well as
> of the private interest that has been affected by a governmental action."

405 U.S. 645, 650-51, citing *367 U.S. 886, 895. See also Goldberg v. Kelly,* 397 U.S.

254, 263. (1970).

56.     Nevertheless, *Stanley v. Illinois* touches on issues inherent to this appeal.

Specifically, the Court cited five decisions concerning the vital importance of

maintaining the family unit.

> The Court has frequently emphasized the importance of the family. The
> rights to conceive and to raise one's children have been deemed "essential," *Meyer*
> *v. Nebraska*, 262 U.S. 390, 399 (1923), "basic civil rights of man," *Skinner v.*
> *Oklahoma*, 316 U.S. 535, 541 (1942), and "[r]ights far more precious . . . than
> property rights," *May v. Anderson*, 345 U.S. 528, 533 (1953). "It is cardinal with us
> that the custody, care and nurture of the child reside first in the parents, whose
> primary function and freedom include preparation for obligations the state can
> neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). The

integrity of the family unit has found protection in the Due Process Clause of the
Fourteenth Amendment, *Meyer v. Nebraska*, supra, at 399, the Equal Protection
Clause of the Fourteenth Amendment, *Skinner v. Oklahoma*, supra, at 541, and the
Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965).

405 U.S. 645, 651.

57.     Most significant for the case at bar, the opinion also spoke directly to the

presumption against separating families without individualized consideration afforded by

an administrative hearing.

> Procedure by presumption is always cheaper and easier than individualized
> determination. But when as here, the procedure forecloses the determinative issues
> of competence and care, when it explicitly disdains present realities in deference to
> past formalities, it needlessly risks running roughshod over the important interests
> of both parent and child. It therefore cannot stand.

405 U.S. 645, 656-67.

58.     The petitioner does not here dispute that the Attorney General has broad authority

to shape the parameters of available relief. He merely urges this Court that a lengthy

period of lawful residence creates substantial roots and ties to the United States which are

recognized by it's Constitution. When his application for relief was pretermitted without

any consideration of those factors, tangible and intangible, his right to substantive due

process was denied.

59.     The Fifth Circuit has recently and repeatedly held that aliens have no protected

liberty or property interest in eligibility for discretionary relief from deportation.

However, the facts giving rise to this petition are readily distinguishable from the

removal cases considered by the Fifth Circuit. The defendant/appellant in *United States
v. López Ortiz*, 313 F.3d 225 (5th Cir. 2002), was placed in removal proceedings as a

28

result of a conviction for a drug offense. He waived his right to counsel, admitted the

charge of removability as an aggravated felon, and waived appeal. 313 F.3d 225. Lopez

Ortiz only claimed a right to seek an administrative determination of his LPR status after

he was deported and returned unlawfully. 313 F.3d 225, 226-27.

60.    The Fifth Circuit found that López Ortiz' due process rights had not been violated

because he was afforded the procedural protections required by the United States

Supreme Court. 313 F.3d 225, 330. Further, the BIA has consistently held that 212(c) is

not available to a former LPR who left the United States subsequent to an order of

deportation or removal. *See Matter of Duarte,* 18 I&N 329 (BIA 1982), *Matter of*

*Gunyadin,* 18 I&N 324, (BIA 1982).  However, and most significantly for the legal

arguments in this petition, the Fifth Circuit stated in *Lopez Ortiz* that eligibility for 212(c)

is not a liberty or property interest warranting due process protection." 313 F.3d 225, 331.

The defendant/appellant in *Lopez Ortiz* knowingly waived his right to counsel, did not

contest charges, and waived appeal in an administrative hearing before an IJ. Mr. Salazar

had notice of the charges and was present at all hearings, yet was not afforded an

opportunity to be heard on the merits of his substantial equities in the United States. In

his administrative hearing, Lopez Ortiz willingly declined the opportunity to present any

equities he may have accrued during his period of lawful residence.  Even though the

procedure afforded Mr. Salazar may have been constitutionally adequate, the effect of

characterizing deferred adjudication as a conviction and terminating Mr. Salazar's

lengthy residence without consideration of family and property ties does not sufficiently

recognize the gravity of Mr. Salazar's loss as a result of his expulsion, and thus

disregards substantive due process. In *Lopez Ortiz*, the Fifth Circuit considered whether

the procedural safeguards were adequately observed. Here, Mr. Salazar urges this Court despite the efficacy of the procedural safeguards, substantive due process requires any long-time LPR an opportunity to present evidence of everything he or she will lose, including the devastation to the lives of United States citizen family members upon the abrupt termination of his lawful status.

61.    In *López de Jesús v. I.N.S.,* 312 F.3d 155 (5th Cir. 2002), the non-citizen, who had been an LPR for less than one year when removal proceedings were initiated, applied for a discretionary waiver for immigrants  inadmissible as a result of smuggling family members. However, the waiver had already been statutorily eliminated when Lopez de Jesús applied for it. 312 F. 3d 155, 156. The Fifth Circuit found it's decision in *Gonzalez Torres v. I.N.S.* 213 F.3d 899, (5th Cir 2000), to be controlling in the case of an applicant for a waiver pursuant to INA §212(d)(11). "While petitioners may have expected that they would be eligible for suspension of deportation, IIRAIRA's amendment limited only their eligibility for discretionary relief; it did not infringe on a right they possessed prior to it's enactment." 312 F.3d 155, 170.  The Fifth Circuit equated eligibility for discretionary suspension of deportation with eligibility for the discretionary "family smuggling waiver."

62.    The petitioner respectfully urges this Court that a discretionary waiver under INA §212(d)(11) and suspension of deportation are two waivers of a type and quality distinct from 212(c) relief and cancellation of removal for long-time LPR's. 8 U.S.C. §1229a(b). Substantive due process cannot plausibly be raised by a non-citizen whose only claim to lawful status is a continuous period of unlawful presence. Thus, the case at bar is

meaningfully distinguishable from those presented in *López de Jesús v. I.N.S., supra,* and *Gonzalez Torres v. I.N.S., supra.* Suspension of deportation only required a showing of seven years unlawful presence and good moral character. *See* (former) 8 U.S.C. §1182(a). Any LPR who smuggled a family member was eligible for the waiver found at (former) 8 U.S.C. §1181(d)(11). LPR status is not easily acquired. Neither suspension nor a discretionary waiver at INA §212(d)(11) required the applicant to present evidence of outstanding equities, significant property ties, or value to the community. An applicant for suspension or the family member smuggling waiver could not normally assert a right to substantive due process for a lack of a lengthy period of lawful permanent residence and the accompanying property interests which invariably develop over the course of many years in the United States.

63.    There are two pre-*St. Cyr* Fifth Circuit decisions reasoning that the petitioner has no fundamental right to seek a discretionary waiver, *Finlay v. I.N.S.* 210 F.3d 556 (5th Cir. 2000) and *Alfrache v. Cravener,* 203 F.3d 381 (5th Cir. 2000) In *Finlay v. I.N.S., supra,* the appellant challenged the retroactive application of the term "aggravated felony" to his conviction for arson. The Fifth Circuit dismissed the petition based on it's decision in *Max-George v. Reno,* 205 F.3d 194, (5th Cir. Feb. 24, 2000). Prior to it's conclusion, this Court again cited *Max George v. Reno* and stated: "Unless a petitioner proves that his or her claims are within the writ constitutionally protected (a situation which . . . is unlikely), we must summarily dismiss for lack of jurisdiction." 210 F.3d 556, 557, citing *Max George v. Reno*, 205 F. 3d 194, 202.  Even upon declining to recognize eligibility for relief as a fundamental right, (upon which a claim to substantive due process may be based), the Fifth Circuit "left the door open," to the LPR who can

31

prove that a lengthy period of lawful residence, when considered in conjunction with significant family ties and property interests in the United States, is an interest protected by the Fifth Amendment.

64.     In *Alfrache v. Cravener, supra*, another pre-St. Cyr decision, the Fifth Circuit held "that AEDPA § 440(d) prohibits Alfarache's seeking discretionary relief from deportation under INA § 212(c)." 203 F.3d 381, 383. Alfrache also argued that the timing of deportation proceedings violated his right to due process and that he had been denied equal protection because 212(c) relief remained available for non-citizens who had been placed in exclusion proceedings. The Fifth Circuit rejected those claims and noted, "Furthermore, the relief to which Alfarache may have been entitled under INA § 212(c) "was couched in conditional and permissive terms. As a piece of legislative grace, it conveyed no rights, it conferred no status." 203 F.3d 381, 383-84. Nevertheless, despite the Fifth Circuit's reasoning in *Alfrache*, the petitioner asserts that a lengthy period of lawful permanent residence and assimilation to the language and culture of the United States in the case of a person with tangible property interests and profound family ties merits individualized consideration. The petitioner does not challenge the authority of Congress to protect the nation from elements deemed dangerous. Neither does he attempt to minimize the gravity of his offense. However, the petitioner respectfully urges this Court that even assuming that an opportunity to present evidence of significant equities in the form of lengthy residence and family and property ties does not fall within the category of "fundamental right," the automatic deportation of a long-time LPR who was never incarcerated for his offense does not make anyone any safer. Review of the record reveals that the state of Texas never incarcerated the petitioner in order to protect society.

32

Yet under the INA as currently construed, an individual LPR's length of residence, family and property ties, or evidence of rehabilitation are irrelevant. Even though the petitioner is no demonstrable danger to the community, his LPR status still must be automatically terminated without an opportunity to seek relief, because his deferred adjudication rendered him removable as an aggravated felon.   This combination of effects, denominating a deferred adjudication as a conviction, and then finding that the underlying offense is an aggravated felony for which no individual consideration will be afforded, does not appreciably further the goal of the legislation.  The ostensible means of protecting the nation, (automatic deportation), is not a logical solution when the subject of those proceedings has never been found to be a danger from which society is in need of protection. Even if this court does not recognize eligibility for discretionary relief as a fundamental right worthy of substantive due process, the effect of including Mr. Salazar in the aggravated felony category is not a sound exercise of legislative authority.

WHEREFORE, it is urged that the Court grant the following relief:

1.      That the Writ of Habeas Corpus issue, and

2.      The removal order be vacated, and the petitioner's case be remanded to the BIA for further proceedings consistent with the principles articulated herein;

3.       That respondents Moore and Ashcroft be enjoined from executing the order of removal or changing Mr. Salazar's custody status; and

4.      That the Court award such other and further relief as the Court deems just and appropriate under all of the circumstances.

Respectfully submitted,

33

Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835


## VERIFICATION

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.

Jodilyn M. Goodwin, Esq.

### Certificate of Conference

I, Jodilyn M. Goodwin, certify that on August 16th, 2004, I spoke with AUSA Stephen Schammel and advised him of the filing of this writ on this day.

Jodilyn M. Goodwin, Esq.


## CERTFICATE OF SERVICE

I, Jodilyn M. Goodwin, certify that today, August 16, 2004, a copy of the petition for writ of habeas corpus, was served upon AUSA Stephen Schammel, by hand delivery to the United States Attorney, 600 East Harrison, Brownsville, Texas, 78520.

Jodilyn M. Goodwin, Esq.